1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9

10    KOMALPREET KAUR,

11                  Petitioner,                      No. 1:25-cv-01726-TLN-SCR

12
13          v.                                       **ORDER**

14    UNITED STATES DEPARTMENT OF
      HOMELAND SECURITY, et al.,
15
                    Respondents.
16

17

18          This matter is before the Court on Petitioner Komalpreet Kaur's ("Petitioner") Motion for

19    a Temporary Restraining Order ("TRO").  (ECF No. 12.)  Respondents United States Department

20    of Homeland Security ("DHS"), Kristi Noem, Pamela Bondi, Todd Lyons, Sergio Albarran,

21    Christopher Chestnut (collectively "Respondents") filed an opposition.  (ECF No. 18.)  Petitioner

22    replied.  (ECF No. 19.)  Parties waived hearing and had no objection to converting the request for

23    TRO into a request for preliminary injunction.  (ECF Nos. 18, 20.)  For the reasons set forth

24    below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction.[1]

25          **I.    FACTUAL AND PROCEDURAL BACKGROUND**

26          Petitioner is a 23-year-old native and citizen of India who is 90 pounds and three months

27    _____

28    [1]      The Court previously granted Petitioner's motion via minute order.  (ECF No. 22.)  This
      Order explains the Court's reasoning.

                                            1

1  pregnant.  (ECF Nos. 12 at 8; 18 at 6.)  For the majority of her pregnancy, she has been in

2  immigration detention and she is experiencing medical issues that put her pregnancy at risk,

3  including weight loss and elevated bilirubin levels.  (ECF No. 12 at 7.)  Her medical issues have

4  necessitated emergency care.  (ECF No. 1 at 9–18.)

5         Petitioner arrived in the United States without inspection on December 7, 2024.  (ECF No.

6  12 at 8.)  She was first apprehended by DHS, then released on her own recognizance on

7  humanitarian grounds on December 17, 2024.  (*Id.*; ECF No. 18 at 11, 13.)  As part of her

8  conditions of release, Petitioner is required to check in with U.S. Immigration and Customs

9  Enforcement (“ICE”), keep them informed of her address, and comply with all laws.  (ECF No.

10 18 at 13 (Order of Release on Recognizance).)

11        Since her release, Petitioner has applied for asylum and her case is still pending.  (ECF

12 No. 12 at 8.)  In the meantime, ICE granted her a five-year work permit.  (*Id.*)

13        Petitioner has no criminal record.  (*Id.*)

14        On October 6, 2025, Petitioner appeared for a routine ICE check-in and she was detained.

15 (*Id.* at 8–9.)  The DHS warrant, served on Petitioner at the time of her detention, stated there was

16 “probable cause to believe that [Petitioner] is removable . . . based upon: the pendency of ongoing

17 removal proceedings,” confirmation of Petitioner’s identity, and statements that Petitioner lacked

18 immigration status.  (ECF No. 18 at 19.)  That is to say, the warrant did not identify any new or

19 changed circumstances which were not already known to DHS.

20        Petitioner reports the conditions at the California City Detention Facility, where she is

21 currently held, are “abysmal.” (ECF No. 12 at 19.)  She reports she is malnourished; the

22 temperature in the facility is frigid; she is experiencing regular nosebleeds, insomnia, and

23 physical and mental health issues.  (ECF No. 10 at 8.)  She describes the water as tasting like

24 bleach or detergent.  (*Id.*)

25        On October 28, 2025, an Immigration Judge denied Petitioner a bond hearing, finding the

26 judge lacked authority to consider the matter due to a Board of Immigration Appeals decision.

27 *See Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025) (stripping Immigration

28 Judges of authority to consider bond requests for any person who entered the United States

1    without admission pursuant to a recent DHS policy mandating detention for those persons).  (ECF

2    No. 18 at 21–22.)

3        Petitioner was arrested and detained for approximately 2.5 months without a hearing, until

4    December 18, 2025, when this Court issued an order releasing Petitioner to avoid further

5    irreparable harm.  (ECF No. 22.)  This order explains the Court's reasoning.

6        **II.    STANDARD OF LAW**

7        A preliminary injunction is an extraordinary remedy.  Courts consider whether a petitioner

8    has established: "[1] that [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer

9    irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her]

10   favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*,

11   555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.

12   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

13       In evaluating a petitioner's motion, a district court may weigh a petitioner's showings on

14   the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the

15   hardships may support issuing a preliminary injunction even where there are "serious questions

16   on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable

17   injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must

18   demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of

19   hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a

20   preliminary injunction.  *Id.* at 1134–35.

21       **III.    ANALYSIS**

22       The Court considers each of the *Winter* elements with respect to Petitioner's motion.

23       A.    Likelihood of Success on the Merits

24       Petitioner asserts she is being detained without notice and a hearing in violation of the

25   Immigration and Nationality Act ("INA") and her procedural due process rights.[2]  The Court

26   _____

27   [2]    Petitioner also claims violations of substantive due process, federal regulations (8 C.F.R.
     §§ 212.5, 236.1), and the Administrative Procedures Act because, *inter alia*, ICE's conduct runs
     afoul of its own policies (*see* ICE Directive: Identification and Monitoring of Pregnant,

28   Postpartum, or Nursing Individuals (2021), https://www.ice.gov/directive-identification-and-

3

1    addresses each in turn.

2                                    i.  *Statutory Claim*

3        The Court wearily begins on well-covered ground:  Whether § 1225(b)(2) or § 1226(a)

4    governs Petitioner's immigration detention.  Respondents claim Petitioner is subject to mandatory

5    detention under 8 U.S.C. § 1225(b)(2) — a position Respondents take due to a DHS policy

6    change.[3]  (ECF No. 18 at 1.)  Petitioner claims that 8 U.S.C. § 1226(a) applies to her detention,

7    which affords her additional due process including a hearing (ECF No. 12 at 10–13).

8        The issue turns on whether Petitioner is an applicant "seeking admission."  Section

9    1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission"

10   and does not provide for a bond hearing.  Section 1226(a) "provides the general process for

11   arresting and detaining [noncitizens] who are present in the United States and eligible for

12   removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the

13   Government has broad discretion whether to release, parole, or detain the individual.  *Id.*  But §

14   1226(a) also provides several layers of review for an initial custody determination and confers

15   "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by

16   counsel and to present evidence, the right to appeal, and the right to seek a new hearing when

17   circumstances materially change."  *Id.* at 1202.  Until DHS changed its policy in July, the

18   Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the

19   United States who were detained by immigration authorities and subject to removal, like

20

21   monitoring-pregnant-postpartum-or-nursing-individuals).  (*See generally* ECF No. 12.)  However,
     after finding injunctive relief is warranted based on Respondents' violations of the INA and the
22   Fifth Amendment Due Process Clause, the Court declines to address cumulative violations.

23   [3]     On July 8, 2025, DHS issued a new policy stating anyone arrested within the United
24   States and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) shall be considered an
     "applicant for admission" under § 1225(b)(2) and subjected to mandatory detention ("the DHS
25   policy").  The policy upends the Government's long-standing practice that noncitizens living in
     the United States who may be removed are subject to 8 U.S.C. § 1226(a), which provides broad
26   discretion for release, parole, or detention, and provides additional procedural protections.

27        Respondents' argument entirely relies on the DHS policy change to detain Petitioner.
     They do not argue that they have an independent basis to subject Petitioner to mandatory
28   detention.

                                            4

1   Petitioner.  *See id.* at 1196.

2       Courts nationwide, including this one, have overwhelmingly rejected Respondents' new

3   legal position and found the DHS policy unlawful. *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-

4   cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No.

5   25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350

6   cases ruled the DHS policy improper across 160 different judges sitting in about 50 different

7   courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-

8   JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto*

9   *Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at

10  *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

11      This Court has agreed with the chorus of well-reasoned and compelling decisions and has

12  made its position clear.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL

13  3552841, at *2 (E.D. Cal. Dec. 11, 2025).

14      Thus, the Court finds Petitioner is not an applicant "seeking admission" subject to

15  mandatory detention under § 1225(b)(2).  Rather, Petitioner is subject to § 1226(a) and statutorily

16  entitled to the processes conferred by that provision, including a bond hearing at a minimum.  *See*

17  *Rodriguez*, 53 F.4th at 1196.  However, Respondents refused Petitioner a bond hearing.

18      Thus, Petitioner is likely to succeed on the merits of her claim that Respondents have

19  violated the INA and improperly subjected her to mandatory detention without a hearing.

20              *ii.   Constitutional Claim*

21      Petitioner also contends her Fifth Amendment due process rights were violated because

22  she was re-detained without notice, without changed circumstances, and without an opportunity

23  to be heard.  (ECF No. 12 at 13–16.)  Respondents refute they owe Petitioner a hearing.  (ECF

24  No. 18 at 1.)

25      The Fifth Amendment Due Process Clause prohibits government deprivation of an

26  individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d

27  976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

28  the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

1   These due process rights extend to immigration proceedings, including detention.  *Id.* at 693–94;

2   *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

3         Courts examine procedural due process claims in two steps: the first asks whether there

4   exists a protected liberty interest under the Due Process Clause, and the second examines the

5   procedures necessary to ensure any deprivation of that protected liberty interest accords with the

6   Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

7   *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

8   the question remains what process is due.").

9                                    *a)  Liberty Interest*

10        "Freedom from imprisonment—from government custody, detention, or other forms of

11   physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."

12   *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or

13   over whose liberty the government wields significant discretion retain a protected interest in their

14   liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

15        "Although in some circumstances the initial decision to detain or release an individual

16   may be within the government's discretion, the government's decision to release an individual

17   from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty

18   'will be revoked only if they fail to live up to the . . . conditions of release."  *Id*. (quoting

19   *Morrissey*, 408 U.S. at 482) (cleaned up).  "Accordingly, a noncitizen release from custody

20   pending immigration proceedings has a protected liberty interest in remaining out of custody."

21   *Salcedo Aceros*, 2025 WL 2637503, at *6.  To determine whether an individual's conditional

22   release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

23   conditional release in the case before them with the liberty interest in parole as characterized by

24   *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.

25   Cal. Sept 9, 2025).

26        Here, Petitioner has a substantial liberty interest in her continued release.  As in

27   *Morrissey*, Petitioner's release from immigration custody created an "implicit promise" that her

28   liberty would not be revoked if she complied with the conditions of her release.  408 U.S. at 482.

1    She has also developed "enduring attachments of normal life." *Id.* Petitioner got married and is

2    preparing to start a family. Petitioner was released from immigration custody with a reasonable

3    expectation that she would be entitled to retain her liberty, absent a material change in

4    circumstances, as she awaits a determination on her immigration proceedings. Petitioner has not

5    been arrested or charged with any crimes in violation of such release, and she has regularly

6    checked in with ICE and notified the agency of her whereabouts. ICE also granted Petitioner a

7    five-year work permit, which increases Petitioner's reliance on her liberty interest.

8           Respondents counter that a deportation officer claims Petitioner has violated the

9    conditions of her release. (ECF No. 18 at 1–2.) In response, Petitioner stated she was "stunned

10    by the inaccurate allegations in the declaration of the [deportation officer]." (ECF No. 19-1 at 4.)

11           The Court does not find credible support in the record that Petitioner violated her

12    conditions of release. Respondents' only support for their claim are statements within the

13    declaration of ICE deportation officer Ana L. Juarez. (ECF No. 18 at 4–22.) Ms. Juarez states:

14    "ICE placed Petitioner on the Intensive Supervision Appearance Program ('ISAP'), with

15    reporting requirements as a condition of ***his*** release" and goes on to list purported missed check-

16    ins.[4] (ECF No. 18 at 5 (emphasis added).) ISAP is an Alternative to Detention program.[5] Yet, as

17    Petitioner points out, her Form I-213, attached to Ms. Juarez's declaration, states: "[Petitioner]

18    will be released on her own recognizance due to humanitarian reasons and a lack of detention

19    space. . . . Alternative to Detention (ATD) have been denied for the detainee." (ECF Nos. 18 at

20    11; 19 at 3.) Therefore, Ms. Juarez's statement that Petitioner was placed on ISAP directly

21    contradicts the documentation submitted with her declaration stating that Petitioner would not be

---

23    [4]    The misuse of pronouns concerns the Court that this may be a haphazard copy from
24    another file. Additionally, the majority of alleged missed check-ins occurred in early 2024,
      before Ms. Juarez was employed by ICE, and she does not directly explain how she knew of the
25    check-ins, whether she verified the accuracy of the missed check-ins or whether they were
      technical errors. (*See* ECF No. 18 at 4–7.) Nor did she submit any documentation evidencing
26    missed check-ins. (*See id.*)

27    [5]    ICE, Alternatives to Detention, https://www.ice.gov/features/atd ("ATD consists of the
      Intensive Supervision Appearance Program (ISAP)").

1    placed on any such program.  (*Compare* ECF No. 18 at 5, *with* ECF No. 18 at 11.)  Ms. Juarez

2    does not provide any information or explanation to reconcile the discrepancy.[6]  Thus, the Court

3    cannot credit unverified statements which contradict evidence in the record.

4        Petitioner asserts that she has complied with all conditions of her humanitarian release on

5    recognizance.  (*See generally* ECF No. 19.)  She claims she has attended every ICE appointment,

6    including home visits, and sends selfies every Friday to ICE, as required.  (*Id.*)  She has updated

7    her contact information with ICE and complied with all laws.  (*Id.*)  Petitioner submitted an

8    affidavit from her husband who attested to her compliance efforts.  (ECF No. 19-2.)  Indeed, it

9    was Petitioner's compliance with routine ICE check-ins — appearing for her October 6, 2025

10   check-in — that led to her detention.

11       The weight of the evidence favors a finding that Petitioner was likely in compliance with

12   the conditions of her release, preserving the full force of her liberty interest.  Thus, Petitioner is

13   likely to succeed on the merits of her constitutional claim. *See, e.g.*, *Bernal v. Albarran*, No. 25-

14   CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding detention of asylum

15   applicant improper under § 1226(a), even if she violated the conditions of her release, because she

16   was not a danger to society or a flight risk).

17       In any event, the exact conditions of Petitioner's conditions of release and compliance

18   need not be resolved at this stage.  Even if Petitioner missed some ICE check-ins to raise

19   questions about the likelihood of success, balancing the *Winters* factors together, the scales still

20   tip sharply in favor of Petitioner.

21                            *b)  Procedural Due Process*

22   _____

[6]        For example, Ms. Juarez does not provide information or an explanation about when or
23   how Petitioner came to be placed on ISAP, describe the requirements of ISAP, or provide
     evidence of ISAP placement and missed check-ins.
24

25        The Court also notes that it appears from the record Petitioner had no notice of these
     purported violations and was not given an opportunity to be heard.  There is no evidence that
26   Petitioner was told before, or even during, the October 6, 2025 ICE check-in that ICE claimed she
     violated conditions of her supervision.  Moreover, the warrant underlying Petitioner's arrest did
27   not list violations of conditions as a reason for detention.  (ECF No. 18 at 19.)  It appears that
     Petitioner just learned of ICE's compliance concerns 2.5 months into her confinement, through
28   Ms. Juarez's declaration, after making a literal federal case about her detention.

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at 1206.

Petitioner argues that the *Mathews* factors favor Petitioner and due process requires notice, changed circumstances, and a pre-deprivation hearing.  (ECF No. 12 at 14–17.)  Respondents contend Petitioner is not entitled to a bond hearing at any time.  (ECF No. 18 at 1.)

As to the first *Mathews* factor – Petitioner's private interest – as discussed above, Petitioner has a powerful interest in her continued liberty.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the risk here is considerable.  The risk of an erroneous deprivation of Petitioner's liberty interest is high where she has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *See A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  This is particularly so where, as here, Petitioner was previously released pursuant to a finding that she was neither dangerous nor a flight risk.  *See R.D.T.M.*, 2025 WL 2686866 at *6 ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.")  She has also maintained contact with ICE and has no criminal history.  As discussed above, the Court is not certain the deportation officer's declaration even refers to the correct individual; the confusion in the record about Petitioner's conditions of release further underscore a high risk of erroneous deprivation of liberty and the need for additional safeguards.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is low. *R.D.T.M.*, 2025 WL 2686866 at *6. Custody hearings in immigration court are "routine and impose a 'minimal' cost." *Id.* (citing *Doe*, 787 F. Supp. 3d at 1094; *Pinchi*, 2025 WL 1853763, at *2). Indeed, § 1226(a) — the statute the Court found governs Petitioner's detention — provides for such protections. Thus, a hearing is not only a minimal burden, but also a routine and required process.

Moreover, Respondents have not provided any legitimate interest for detaining Petitioner. *See Hernandez*, 872 F.3d at 981 (finding "[immigration] detention incidental to removal must bear a reasonable relation to its purpose."). "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Id.* at 994. The Government has not issued a final order of removal for Petitioner. Petitioner was initially determined not to be a flight risk and has since stayed in communication with ICE and updated her address. Nor is Petitioner a danger to the community. She has no criminal history, which Respondents do not refute.

For these reasons, the Court finds Respondents' interest, if any, in detaining Petitioner without a hearing is negligible and does not outweigh her substantial liberty interest or the risk of erroneous deprivation of liberty. At minimum, due process thus requires that Petitioner receive a hearing before a neutral decisionmaker. Respondents denied her that constitutionally required process.

Having found Petitioner has a protected liberty interest and determined that due process requires Petitioner receive a hearing before a neutral decisionmaker, the Court finds that Petitioner has established a likelihood of success on the merits.

B.    Irreparable Harm

The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017).

As stated above, Petitioner's irreparable harm is considerable. She describes dire conditions of her detention and reports weight loss and elevated bilirubin levels – both of which place her pregnancy at risk – in addition to reporting mental health concerns.

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition to harms imposed on her and her child by continued immigration detention, Petitioner has shown she is likely to succeed on the merits of her constitutional claims.

Thus, the Court finds Petitioner has suffered significant irreparable harm sufficient to warrant immediate release.

### C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Moreover, the public has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.")

As discussed above, Petitioner is likely to succeed in proving that Respondents have violated federal laws and deprived her of her constitutional rights and liberty. Additionally,

1  Respondents are not harmed by their sworn duty to follow the law.  *See Zepeda v. U.S. I.N.S.*, 753

2  F.2d 719, 727 (9th Cir. 1983).  Thus, the balance of equities and public interest factors weigh in

3  Petitioner's favor.

4          Having found that each of the *Winter* factors tip sharply in Petitioner's favor, this Court

5  finds that immediate release is warranted to return to the status quo ante and remedy a

6  constitutional violation. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at

7  *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the

8  pending controversy.").

9      **IV.    CONCLUSION**

10          Therefore, the Court GRANTS Petitioner's motion and issues the preliminary injunction

11  set forth below.  IT IS HEREBY ORDERED that:

12          1.      Petitioner's motion for temporary restraining order (ECF No. 12), converted to a

13  motion for preliminary injunctive relief, is GRANTED.

14          2.      Respondents must file a notice certifying compliance with the Court's prior order

15  to release Petitioner from custody under the same conditions of release (ECF No. 22) **by**

16  **December 23, 2025**.

17          3.      Respondents are ENJOINED AND RESTRAINED from re-arresting or re-

18  detaining Petitioner absent compliance with constitutional protections, including a minimum of

19  seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) by

20  clear and convincing evidence, that Petitioner poses a danger to the community or a flight risk, or

21  (b) there are material changed circumstances which demonstrate a significant likelihood of

22  Petitioner's removal in the reasonably foreseeable future.  At any such hearing, Petitioner shall be

23  allowed to have her counsel present.

24          4.      The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See*

25  *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).  Courts regularly waive security in cases

26  like this one.  *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D.

27  Cal. Oct. 10, 2025).

28          5.      This matter is referred back to the United States Magistrate Judge for further

1   proceedings.

2         IT IS SO ORDERED.

3   Date: December 22, 2025

4

                                  TROY L. NUNLEY

5                                   CHIEF UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28